20 So.2d 737

**BETHLEHEM SUPPLY CO. v. PAN–SOUTHERN PETROLEUM CORPORATION.**

No. 36932.

Nov. 15, 1944.

Rehearing Denied Jan. 15, 1945.

Cobb & Saunders, of New Orleans (Doerner, Rinehart & Stuart, of Tulsa, Okl., of counsel), for plaintiff and appellant.

Albert B. Koorie, of New Orleans, for defendant and appellee.

PONDER, Justice.

This is an appeal from a judgment dissolving a writ of provisional seizure.

The plaintiff, Bethlehem Supply Company brought suit against the defendant to recover $10,595.62 for materials and supplies furnished for the drilling and operation of oil wells. The plaintiff alleged that it held a lien and privilege on the drilling rigs, the oil stored on the leased premises, and other property of the defendant connected with the oil well, and that it verily·believed the defendant was about to remove and sell the drilling rigs and the oil stored on the leased premises with the view of depriving the plaintiff of its lien and privilege. The· plaintiff prayed for the issuance of a writ of provisional seizure.

The defendant moved to dissolve the writ on the ground that Act 145 of 1934, as amended by Act 100 of 1940, is unconstitutional. In the alternative, the defendant claimed that the writ should be dissolved for the reason that the plaintiff had failed to record its lien within sixty days after the last delivery of supplies. In the further alternative, the defendant moved to dissolve the writ on the ground that plaintiff's allegation, that plaintiff believed the oil and drilling rigs were about to be removed, was false and untrue. Upon hearing, the lower court dissolved the writ, and the plaintiff has appealed.

In its motion to dissolve the writ, the defendant alleged that Act 100 of 1940 in repeating the title of Act 145 of 1934 is misleading in that it is broader than and at variance with the title of Act 145 of 1934 and fails to indicate that the title is intended to be amended.

The title to Act 100 of 1940 reads as follows: "To amend and re-enact Act 145 of 1934, entitled, 'An Act to create a lien and privilege on oil, gas and on water wells, and wells drilled in search of oil, gas or water, on the lease on which same are located, and on all drilling rigs, standard rigs, machinery, appurtenances, appliances, equipment, buildings, tanks and all other structures thereto attached for the drilling, equipment and operation of same, in favor of laborers, corporations or persons performing service, in drilling or in connection with the drilling or operation of such wells, and in favor of persons, firms, corporations and associations of persons furnishing any fuel, material and supplies, or

doing any trucking, towing, barging, or repairing for or in connection with the drilling or operation of such wells; providing for the methods of enforcement thereof, including the issuance of writs of provisional seizure, without bond; providing for the time within which such liens and privileges must be recorded to be effective; and for the manner and providing place of recordation; fixing a prescriptive period for such liens and privileges; fixing the venue of suits filed under this Act; fixing the rank of such liens and privileges and mortgages; repealing all laws or parts of law in conflict herewith; and enacting a saving clause for suits commenced under prior laws *by providing that the lien and privilege granted by this Act shall be effective against all property, irrespective of ownership and by providing for the manner of taking, filing, recording, and preserving vendor's liens and privileges, so as to grant them preference over the liens and privileges provided by this act.'* " (Italics ours.)

The only substantial changes made in the title of Act 145 of 1934 by the amendment, Act 100 of 1940, are set out in italics.

The title to Act 100 of 1940 as published in the volume containing the acts of 1940 does not appear to be well constructed. However, from our examination of the official journal of the senate, we find that Act 100 of 1940 was first introduced in the senate as S. B. 168 on May 30, 1940 and read for the first time by title. This bill was an act to amend and re-enact Act 145 of 1934. The Senate Journal shows that amendments to the title of Act 145 of 1934 were proposed on June 7, 1940 by the

Committee on Judiciary, Section B, to the Senate. On June 10; 1940, the proposed amendments, which we have heretofore set out in italics, to the title were adopted. See Official Journal of the Senate, Louisiana, 1940; and Calendar of the Senate, Louisiana, 1940.

"The official Journals of the House and Senate, when published and preserved, constitute the ultimate proof of verity of the proceedings. No extrinsic proof is admissible for the purpose of contradicting the facts therein recited. * * *

"It is well settled that the Journal of the proceedings of each House is a public record, of which the courts are at liberty to take judicial notice." State ex rel. Porterie, Attorney General et al. v. Smith et al., 184 La. 263, 166 So. 72, 77, and authorities therein cited. See also State v. Bauman, 148 La. 743, 87 So. 732.

██ In its motion to dissolve, the defendant takes the position that Act 145 of 1934, as amended, violates sec. 16 of Article III of the Constitution in that it has no title.

While the title to Act 100 of 1940 appears to be poorly constructed, yet, the Senate Journal shows that the title was amended and adopted.

Counsel for the appellant contends that Act 145 of 1934, as amended, violates Article III, sec. 7, of the Constitution in that neither the first nor any of the subsequent sections of the act contain an enacting clause.

██ Section 1 of the 1940 act provides: "Be it enacted by the Legislature of Louisiana, That Act 145 of 1934 is hereby amended and re-enacted so as to read as follows: * * *." This, in our opinion, is a literal compliance with Article III, sec. 7 of the Constitution which provides that the style of the law shall be: "Be it enacted by the Legislature of Louisiana."

██ The defendant alleged in its motion to dissolve that Act 145 of 1934, as amended, is violative of Article III, sec. 16, of the Constitution in that its title does not indicate that a lien and privilege are granted on oil produced and stored on the leasehold.

From a mere reading of the title, it is apparent that it is a sufficient index to indicate that a lien and privilege are granted on oil produced and stored on the premises. Especially is this true since the title provides that the lien and privilege granted by the act shall be effective against all property.

Any one reading the title of the act will readily see that its purpose is the granting of a lien and privilege to protect those furnishing materials and supplies, etc., in connection with the drilling of oil wells, etc. It enumerates various property that is subject to the lien, and then provides that the lien and privilege shall be effective against all property, irrespective of the ownership, on the leased premises. Certainly, no one could seriously contend that this is not sufficient to put a person on inquiry with respect to oil stored on the leased premises.

Counsel takes the position that the title of acts granting liens and privileges must be strictly construed. He relies on the case of Southport Petroleum Co. of Delaware v. Fithian, 203 La. 49, 13 So.2d 382. In that case, we applied the doctrine of strict construction to Act 145 of 1934 in its entirety. The rule of strict construction applies to a statute as a whole. An entirely different rule governs the title of an act.

The title of an act is not to be strictly or technically construed. Municipality No. 3 v. Michoud, 6 La.Ann. 605; City National Bank v. F. C. Mahan, 21 La. Ann. 751; State v. Smith, 184 La. 263, 166 So. 72, and authorities therein cited; State v. Martin, 192 La. 704, 189 So. 109.

All that is required is that the title of a statute should be indicative of its object. The constitutional provision must be construed broadly with the view of effectuating, not frustrating, the legislative purpose. Jackson v. Hart, 192 La. 1068, 190 So. 220; State ex rel. Supervisor of Public Accounts v. Terrell, 181 La. 974, 160 So. 781; Peck v. City of New Orleans, 199 La. 76, 5 So.2d 508; Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 48.

In discussing sec. 16 of Article III in the Succession of Pipitone, 204 La. 391, 15 So. 2d 801, 804, this Court stated: "That section does not require that every change which an act of the Legislature may effect in other laws on the subject shall be expressed in detail in the title of the new act. It requires merely that the title of the act shall be appropriate to the subject dealt with in the act itself, and shall not be misleading as to any purpose intended to be accomplished by the act. That is emphasized by the fact that, in the Constitution of 1921, the clause 'and shall have a title indicative of such object' was substituted for the clause 'and that (one object) shall be expressed in its title', which clause appeared in every previous constitution from and after the adoption of the Constitution of 1845. See Const.1845, art. 118; Const. 1852, art. 115; Const.1864, art. 118; Const. 1868, art. 114; Const.1879, art. 29; and Const. 1898 and 1913, art. 31. It is too well established by the jurisprudence to need citation of the decisions that a title which fairly indicates the subject dealt with in an act of the Legislature, and which cannot deceive or mislead anyone reading the title of the act, is a sufficient compliance with the requirement that the title shall be indicative of the object of the act."

It is alleged in the motion to dissolve that the 1940 act attempts to prevent a movable from becoming an immovable by destination without indicating such in the title of the act.

This contention is leveled at that part of section 2-B which provides that when the lien is filed for record in the parish where the wells are located, the effect of the filing shall prevent said movables from becoming immovables by destination. Counsel advances the argument that there is no indication in the title that the law governing movables becoming immovables by destination is being changed. He contends that

the title merely refers to the ranking of liens and does not indicate that such a radical change is being made in the law.

It is stated in the title as follows: "providing for the manner of taking, filing, recording, and preserving vendor's liens and privileges, so as to grant them preference over the liens and privileges provided by this act."

■ Section 2-B merely provides a method to carry out the purpose of the act. Provisions in the body of a statute which are germane to the object of the legislation need not be expressed in the title. It is sufficient if the title in general terms draws attention to the purpose of the enactment. Peck v. City of New Orleans, supra.

■ All things proper or necessary to carry out the general object of the law, stated in the title, are deemed to be within the scope of the title. Ricks v. Department of State Civil Service, supra.

■ The defendant contends that the plaintiff's allegation, that it verily believes that the defendant was about to remove and .sell the drilling rigs and oil stored on the leased premises with the view of depriving the plaintiff of its lien and privilege, is untrue.

The record shows that some of the property has been removed with the permission of the plaintiff. However, the oil stored on the premises from time to time has been sold and the proceeds derived therefrom have been distributed among creditors other than the plaintiff without the plaintiff's permission.

In view of our conclusion that the plaintiff has a lien and privilege on the oil stored on the premises, there is no merit in this contention.

Our holdings herein make it unnecessary for us to discuss the other grounds set out in the motion to dissolve for the reason that they are not now pertinent.

For the reasons assigned, the judgment of the lower court is set aside. The writ of provisional seizure is reinstated, and the case is remanded to the lower court to be proceeded with according to law. The cost of this appeal to be paid by the defendant appellee. All other costs to await the final disposition of the cause.

O'NIELL, C. J., is of the opinion that the title of Act 100 of 1940 does not indicate that the object or purpose was to make the lien applicable to oil stored on the leased premises.